

# NUMBER 13-11-00404-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

MARTIN KROESCHE ENTERPRISES, INC., COASTAL
OFFSHORE, INC., TANNING INDUSTRIES, INC.,
F/K/A M-SHEA CORPORATION AND MARTIN
KROESCHE, INDIVIDUALLY,                                    Appellants,

v.

GABRIELE HILPOLD, INDIVIDUALLY, PADRE ISLAND
MANAGEMENT GROUP, INC., F/K/A DFI DEVELOPMENT,
INC., K-TEAM USA, INC., OCEAN PARK, INC.,
CONSULTING SERVICES, USA, INC. D/B/A CSUSA, INC.,     Appellees.

## On appeal from the 28th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Chief Justice Valdez**

Appellants, Martin Kroesche Enterprises, Inc., Coastal Offshore, Inc., Tanning

Industries, Inc., f/k/a M-Shea Corporation and Martin Kroesche, individually (collectively

"Kroesche"), appeal from the trial court's order modifying a temporary injunction. By two issues, Kroesche contends that the temporary injunction is void because it does not set a trial date or bond, and Hilpold has not shown irreparable harm. Appellees, Gabriele Hilpold, individually, Padre Island Management Group, Inc., f/k/a DFI Development, Inc., K-Team USA, Inc., Ocean Park, Inc., and Consulting Services, USA, Inc. d/b/a CSUSA, Inc. (collectively "Hilpold"), argue that the trial court's order is not a temporary injunction. We reverse the order of the trial court, dissolve the temporary injunction, and remand for proceedings consistent with this opinion.

## I.    BACKGROUND

After severing their personal relationship in the fall of 2009, Hilpold filed suit against Kroesche and his entities on December 28, 2009, alleging conversion, fraud, deceptive trade practices, breach of contract, negligent misrepresentation, tortious interference with business relations, trespass, breach of fiduciary duty, unjust enrichment, and intentional infliction of emotional distress. Hilpold sought monetary damages, a temporary restraining order, and temporary injunction.

The trial court granted a temporary injunction on December 17, 2010 pursuant to an agreement of the parties. Terms of the injunction included the following: (1) Hilpold agreed to transfer possession of a 2005 Ford Excursion to Kroesche; (2) Kroesche agreed to transfer the title of a 2001 Porsche in Hilpold's possession to Hilpold; (3) neither party would come within 100 feet of each other or their residences; (4) Hilpold agreed to return an engagement ring to Kroesche after depositing it at Casa de Oro, a jeweler, for verification; (5) with regard to personal items in Hilpold's home, Hilpold would keep the washer and dryer, dog and cat, a laptop computer, kitchen table, patio

2

table, and television in the master bedroom, while Kroesche would take possession of the refrigerator in the garage, a living room television, and furniture in the guest bedroom; (6) the parties agreed not to interfere with the other's businesses; (7) within twenty days, Kroesche would notify Hilpold of the names of his lessees at Casa Europa II, a residential property owned by Hilpold[1]; (8) within twenty days, Kroesche would provide Hilpold with proof of insurance coverage on Casa Europa II; (9) with regard to the property owned by Hilpold in Corpus Christi, Texas, beginning January 1, 2010, Kroesche would lease the property for $500 per month; (10) the monthly payment of $3,000 for the American Bank loan would continue to be paid as it was to date; (11) the parties agreed to continue to make monthly payments totaling seven thousand two hundred dollars ($7,200) on the IBC line of credit[2]; (12) neither party would access the $1.5 million IBC line of credit during the pendency of the litigation; and (13) the parties would proceed without bond.

On May 6, 2011, Hilpold filed a motion to modify the temporary injunction claiming "a significant change in circumstance since January 13, 2010." Hilpold alleged conditions had changed because Kroesche created confusion regarding what he had paid towards the $7,200 note payment, as well as regarding the rent paid to Padre Island Management Group, Inc. ("PIMG") from Executive Fitness, a gym that Kroesche has partial interest in, by depositing the money into the IBC line of credit account instead of paying PIMG directly.[3] As a result, Hilpold claims she paid IBC $30,400

---

[1] Kroesche's employees and a few ex-employees live at Casa Europa II and pay rent to Kroesche.

[2] Each party was ordered to pay $3,600 on the IBC line of credit.

[3] Executive Fitness pays $4,750 for a lease on one of Hilpold's properties; however, Hilpold alleges that Kroesche is taking that rent and applying it to the IBC loan.

3

because of Kroesche's failure to make payments pursuant to the injunction, and to avoid foreclosure on her property. She also maintained that late fees have accrued on the IBC loan as a result of Kroesche's failure to pay. Hilpold claimed conditions had further changed because Hilpold lent Kroesche $250,000 as a certificate of deposit to support one of his entities, and Kroesche has not released Hilpold's $250,000 certificate. Hilpold has been put on notice by American Bank that Kroesche's payments are not current.

Hilpold further claimed that she was afraid that Kroesche would sell the mowing service equipment she bought for Kroesche's mowing company, and she did not have sufficient funds to replace them. Hilpold asserted that Kroesche's failure to mow and service Hilpold's lots has led to violations of Corpus Christi city ordinances.

Hilpold also claimed that Kroesche disobeyed the injunction by selling the 2005 Ford Excursion and engagement ring that were supposed to be "held in trust." Hilpold stated she is unable to afford the holding cost of the San Antonio property without Kroesche paying rent.[4] She also states that living conditions at the Casa Europa II are questionable, and she believes that the building is not up to code standards for the City of Corpus Christi. She asked the trial court to order the new owner of "Electric Tan," which was previously owned by Kroesche, to pay rent according to the terms of the contract.[5] Lastly, she alleged that Kroesche is trespassing on a lot adjacent to hers.[6]

---

[4] The record does not disclose what type of holding costs Hilpold refers to, only that Hilpold has received notices from the City of San Antonio that the property was in violation of the City's health and safety codes because it was determined to be a "public nuisance," as defined by the city ordinance.

[5] Terms of the contract were that Kroesche pay $1,800 per month to PIMG.

[6] Kroesche owns a boat dealership, Coastal Offshore, Inc., adjacent to Hilpold's property in Corpus Christi.

4

On May 17, 2011, Kroesche filed a response to the motion to modify the temporary injunction, claiming that, among other things, Hilpold failed to show irreparable injury or changed circumstances. Kroesche alleged that Hilpold was attempting to change the agreed order to cover items not previously addressed.

The trial court held an evidentiary hearing on the motion to modify on May 18, 2011. Thereafter, the trial court signed an "Order on Modification of Temporary Injunction" on May 24, 2011, modifying some terms, including the return of the mowing equipment which previously Kroesche was allowed to keep, $2,000 per month rent on the San Antonio lot which Kroesche did not previously pay, and the release of the $250,000 certificate of deposit.

Kroesche filed his notice of appeal on June 28, 2011, claiming that the modified order is void because it does not require Hilpold to post a security bond and does not set a trial date. Trial in this case was set for March 26, 2012.[7]

## II. DISCUSSION

### A. Standard of Review

The granting or denial of a temporary injunction (including the modification of a temporary injunction) is reviewed for an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's determinations in support of the temporary injunction. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App—Dallas 2003, no pet.); *see also*

---

[7] The parties have not filed anything with the Court that indicates that the trial has commenced; we will therefore proceed with our analysis.

*CMNC Healthcare Prop., LLC v. Medistar Corp.*, No. 01-06-00182-CV, 2006 WL 3628922, at *4–6 (Tex. App—Houston [1st Dist.] Dec. 14, 2006, no pet.) (mem. op.).

### B. Applicable Law

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation, pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove: (1) a cause of action against a defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An irreparable injury is shown if there is no adequate remedy at law, i.e., (1) if the applicant cannot be adequately compensated in damages or (2) damages cannot be measured by any certain pecuniary standard. *Id.*

A party can move to dissolve or modify a temporary injunction on grounds of changed circumstances. *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.—Austin 2000, no pet.). A "change in circumstances" refers to a change in conditions occurring since the granting of the temporary injunction. *Murphy v. McDaniel*, 20 S.W.3d 873, 878 (Tex. App.—Dallas 2000, no pet.). Changed circumstances may include an agreement of the parties, newly revealed facts, or a change in the law that makes the temporary injunction unnecessary or improper. *Id.* When a trial court modifies a temporary injunction, the second order is a complete injunction in and of itself, thus superseding the original. *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 687–88 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that the

second temporary injunction order entitled "order modifying temporary injunction," not "amended order," implicitly vacated first order).

Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. TEX. R. CIV. P. 683. In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant:

> Before the issuance of the temporary restraining order or temporary injunction, the applicant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by the clerk, in the sum fixed by the judge, conditioned that the applicant will abide by the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part.

TEX. R. CIV. P. 684.

Procedural requirements imposed by the Texas Rules of Civil Procedure, which require that an order granting a temporary injunction set the cause for trial on the merits and fix the amount of security to be given by the applicant, are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved. *Qwest Comm. Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000). The reason for requiring an injunction order to include a trial date is to prevent the temporary injunction from effectively becoming a permanent injunction without a trial. *EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 52 (Tex. App.—San Antonio 2002, no pet.). If a temporary injunction does not set a matter for trial on the merits, it violates Texas Rule of Civil Procedure 683, and is therefore void and will be dissolved. *See Qwest Comm. Corp.*, 24 S.W.3d at 337; *see also City of McAllen v. McAllen Police*

7

*Officers' Union*, No. 13-10-00609-CV, 2011 WL 2175606, at *3 (Tex. App.—Corpus Christi March 17, 2011, no pet.) (mem. op.).

### C. Analysis

It is uncontested that the complained-of order did not set a trial date or bond. Kroesche argues it is therefore void. Hilpold argues that the order was not an injunction, but was a sanction that did not require inclusion of a trial date and bond. We disagree.

Hilpold never filed a motion for sanctions, as asserted on appeal. Instead, the complained-of order was entered on Hilpold's motion to modify the temporary injunction due to changed circumstances, not a motion for sanctions. At the hearing on the motion, Hilpold presented reasons for "modification of the injunction as stated in the motion." Although Hilpold used the word "sanctions" once in the motion, the substance of the motion deals with a request to modify the original temporary injunction. For example, in the motion to modify, Hilpold cited case law regarding the modification of an injunction, claimed circumstances had changed as previously discussed, and requested that the status quo be preserved until trial.

On appeal, Hilpold also argues that the trial court used its inherent powers to grant the complained-of order as a sanction. However, to issue a sanction, the trial court must engage in a two-step process: first, the trial court must rely upon the rules and statutes expressly authorizing sanctions whenever possible; and second, the trial court must make factual findings, based on evidence, that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions. *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.); *see*

*also Cullum v. White*, No. 04-09-00695, 2011 Tex. App. LEXIS 9733, at *34 (Tex. App.—San Antonio Dec. 14, 2011, pet. denied). In this case, the trial court did not do so.

Finally, at the May 18, 2011 hearing on Hilpold's motion to modify the injunction, the trial court stated that it did not believe it could enter sanctions based on the motion to modify the injunction. Although Hilpold argues on appeal, as she did before the trial court, that Kroesche committed sanctionable conduct, the trial court clearly denied any request for sanctions and granted relief solely through modification of the temporary injunction.

As noted above, the order modifying the injunction did not set a trial date or require the posting of a bond. It therefore failed to comply with Texas Rules of Civil Procedure 683 and 684 and is void. *See* TEX. R. CIV. P. 683, 684. We sustain Kroesche's first issue.[8]

### III.    CONCLUSION

We reverse the order of the trial court, dissolve the temporary injunction, and remand for proceedings consistent with this opinion.

 

 

 

 

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
5th day of July, 2012.

---

[8] Due to our disposition of issue number one, we need not address Kroesche's other issue concerning irreparable harm. TEX. R. APP. P. 47.1.