Ruble **LANGSTON, Individually and as Trustee of the Three L. Trust, Appellant,**

v.

**EAGLE PRINTING COMPANY, et al., Appellees.**

No. 10-89-052-CV.

Court of Appeals of Texas, Waco.

May 31, 1990.

Rehearing Denied July 26, 1990.

Perry Wesbrooks and Hank Rugeley, Wesbrooks & Rugeley, Wichita Falls, for appellant.

David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellees.

## OPINION

THOMAS, Chief Justice.

This is a libel suit. Ruble Langston, the plaintiff, appeals a summary judgment that he take nothing against the defendants, Eagle Printing Co., which publishes the Bryan–College Station Eagle, publisher John Williams, editor Glenn Dromgoole, and reporter Jann Snell. A prior summary judgment against Langston was reversed. *Langston v. Eagle Pub. Co.*, 719 S.W.2d 612 (Tex.App.—Waco 1986, writ ref'd n.r. e.). However, this summary judgment will be affirmed.

## BACKGROUND

Langston was the trustee of the Three L Trust, which owned the controlling interest in Trailite, Inc., a manufacturer of farm trailers. In July 1982 the Texas Attorney General filed a consumer-fraud suit against Trailite, Langston, and the trust, alleging that Trailite had received $270,000 for trailers which were never manufactured. Langston claimed he was libeled in an article published on July 21, 1982, when Snell wrote, "According to the [consumer-fraud] suit, the Three L Trust was *set up as a sham trust* to avoid direct legal [obligations] to unhappy Trailite customers." (Emphasis added). He contended the libelous allegation was republished on November 9, 1982, and March 2, 1983, after the matter had ceased to be of public concern.

## INDIVIDUAL LIABILITY

Williams and Dromgoole sought a summary judgment on the ground that they were not personally liable for any libelous articles because they "played no role" in their preparation or publication. Langston attacks this ground in his eighth point.

The following rules determine when an individual is personally liable for a libelous publication by a corporation:

It is the law in this state that a corporation may be civilly responsible for libel.... If a corporation publishes and circulates a libel by the aid and assistance of others, they are equally guilty, and will be liable either jointly or several-

ly, as the pleader may elect. Their liability does not grow out of the fact that they are stockholders or members of the corporation, but springs from their active agency in producing and circulating the libel. It is the corporation that is the publisher, and not the persons constituting its membership. Simply to show that persons are stockholders and officers of the publishing corporation will not make them responsible for libelous publication appearing in the paper, *unless it is shown that they, in some way, aided and assisted and advised its publication or circulation, or unless their duties as officers of the concern were of such character as charges them with the performance of functions concerning the publication and circulation of the paper; such duties being of such a nature that the law would imply that such officer knew or should have known of the publication of such libelous matter.*

*Belo v. Fuller,* 84 Tex. 450, 19 S.W. 616, 617 (1892) (emphasis added). The Supreme Court reversed the judgment against the individual *Belo* defendants because the evidence failed to "connect either of [them] with the publication or circulation of the paper containing the libel, or [show] that their duties as members or officers of the corporation were of such character that the law would impute to them an agency in its publication or circulation." *Id.*

Thus, an individual can be liable for a corporation's libelous publication in either of two ways. First, he can be liable because of his own actions in producing or circulating the libel, i.e., by aiding, assisting or advising in its publication or circulation. Second, even if not personally involved in producing or circulating the libel, he will be liable if his corporate duties charge him with the responsibility of publishing or circulating the newspaper.

To establish Williams' and Dromgoole's individual liability, Langston would have to prove that they had either (1) "aided and assisted and advised its publication or circulation," *or* that (2) "their duties ... were of such character as [charged] them with the performance of functions concerning

the publication and circulation of the paper." *See id.* However, the burden is on the defendant seeking a summary judgment to conclusively establish an affirmative defense or to conclusively negate one or more elements of the plaintiff's cause of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). Therefore, to obtain a summary judgment on the ground that they were not personally responsible for any libel, Williams and Dromgoole had to conclusively establish that they had not (1) "aided and assisted and advised in its publication or circulation" *and* that (2) "their duties ... were [not] of such character as [charged] them with the performance of functions concerning the publication and circulation of the paper." *See id.; Belo,* 19 S.W. at 617. Because Langston could establish their individual liability on either of two bases, Williams and Dromgoole had to conclusively negate both bases to obtain a summary judgment that they were not individually liable.

■ Williams and Dromgoole supported the motion by their affidavits and an affidavit from Bob Rogers, a professor of journalism. They contend the affidavits conclusively established that they neither "wrote, edited, reviewed or even saw the articles at issue prior to their publication" nor "committed any affirmative act contributing to the publication of the articles."

Affidavits from interested witnesses can support a summary judgment if they contain evidence that is clear, positive, direct, credible, free from contradictions and inconsistencies, and readily controvertible. TEX.R.CIV.P. 166a(c); *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Assuming that the affidavits met the standards of the rule, they nevertheless contained evidence that was only directed at conclusively negating one basis of personal liability, i.e., that Williams and Dromgoole had no personal involvement in writing, editing or publishing the three articles. The affidavits did not clearly, unequivocally, and conclusively negate the second basis of person-

al liability, i.e., that Williams' and Dromgoole's duties did not charge them with the responsibility of publishing or circulating the Eagle.

A summary judgment is proper only when the evidence shows that, except as to damages, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." TEX.R.CIV.P. 166a(c). By failing to conclusively negate both bases for personal liability, Williams and Dromgoole failed to prove that they were entitled to a judgment as a matter of law on the ground that they were not individually liable to Langston. A material fact issue on their individual liability remained, and the court erred when it entered a take-nothing summary judgment against Langston on that particular ground.[1] Langston's eighth point is sustained. However, as discussed later, the sustaining of this point will not result in a reversal because the summary judgment is supported by other grounds.

### ARTICLE 5432

A "fair, true and impartial account" of a judicial proceeding cannot be the basis of a libel action against a newspaper. TEX. CIV.STAT.ANN. art. 5432(1) (Vernon 1958) (repealed 1985, current version at TEX. CIV.PRAC. & REM.CODE ANN. § 73.002(b)(1) (Vernon 1986)). The defendants sought a summary judgment on the ground that the three articles were privileged as a matter of law under article 5432. Langston attacks this ground in his first three points.[2]

The state filed the consumer-fraud suit on July 20, 1982, charging Langston, the Three L Trust, Trailite and three other individuals with engaging in a fraudulent scheme to induce customers of Trailite to pay for livestock trailers which were never manufactured. According to the state, the defendants defrauded customers out of $270,000, misappropriated $40,000 of Trailite's funds, disregarded the corporate entity, and used Trailite as a conduit for unjust enrichment. Trailite existed, the state asserted, for the purpose of "insulating Defendants individually from the claims of persons who never received their trailers or their money back."

In an article published on July 21 Snell wrote, "According to the suit, the Three L Trust was set up as a sham trust to avoid direct legal [obligations] to unhappy Trailite customers." This is the only portion of the article that Langston claimed was libelous. Admittedly, Jann Snell exaggerated the allegations of misconduct against Langston by reporting that the state had alleged the trust was "set up as a sham trust to avoid direct legal [obligations] to unhappy Trailite customers." That type of allegation was made against Langston, but only with regard to Trailite: i.e., the state alleged that Trailite existed for the purpose of "insulating Defendants individually from the claims of persons who never received their trailers or their money back." This was substantially equivalent to charging that Langston used the corporation as a "sham."

■ An article qualifies under article 5432, and is thus privileged, if it is a substantially true account of a judicial proceeding. *Ray v. Times Pub. Co.*, 12 S.W.2d 165, 166 (Tex.Comm'n App.1929, holding approved). Although it may greatly exaggerate the libel-plaintiff's misconduct alleged in a judicial proceeding, an

---

1. The court did not specify the particular ground or grounds on which the summary judgment was entered. Accordingly, Langston had to attack all grounds on which it could have possibly been entered or risk having it summarily affirmed on the unchallenged grounds. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

2. The defendants also sought the summary judgment on the ground that this court decided in *Langston v. Eagle Pub. Co.*, 719 S.W.2d 612 (Tex. App.—Waco 1986, writ ref'd n.r.e.), that the arti-

cles were fair, true and impartial accounts of judicial proceedings. They argued that the "law of the case" conclusively established the privileged nature of the articles under article 5432. *See* TEX.CIV.STAT.ANN. art. 5432(1) (Vernon 1958) (repealed 1985, current version at TEX. CIV.PRAC. & REM.CODE ANN. § 73.002(b)(1) (Vernon 1986)). Langston attacks this ground in his first point. However, the disposition of this appeal does not require a discussion of this particular ground or the first point of error.

article is substantially true if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration. *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 515 (Tex.App.—Tyler 1987, writ dism'd w.o.j.); *Crites v. Mullins*, 697 S.W.2d 715, 717 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). This is the basis for the defendants' contention that the July 21 article, though inaccurate, was nevertheless substantially true as a matter of law.

■ As noted above, Langston was charged with using Trailite to "insulate" himself from claims of unhappy Trailite customers. Considering that he was charged with defrauding seventy persons out of $270,000 and misappropriating $40,-000 of corporate assets, an allegation that Langston used the corporate entity as a "sham" to protect himself from unhappy customers would surely be seen by an average reader as one of the milder accusations against him. Consequently, the average reader would not ascribe a more venal intent to Langston's actions merely because of an exaggerated allegation that the trust was "set up" to accomplish the same purpose. Thus, the July 21 article was substantially true because the variance between the misconduct alleged in the consumer-fraud suit and the exaggerated report of the misconduct did not result in additional calumny. *See id.*

The November 9 article, in which Snell reported that "[Assistant Attorney General] Bowers said he plans to show that the Three L Trust was used as a sham to avoid direct legal [obligations] to unhappy Trailite customers," was also substantially true.[3] Repeating the exaggerated allegation in a subsequent article, regardless of whether it was properly attributed to Bowers, would not cause an average reader to assign more opprobrium to Langston's conduct because of the minor variance between the allegations in the consumer-fraud suit and what was reported. *See id.*

Finally, the March 2, 1983, article reported that Langston's libel action "contends the *Eagle* incorrectly stated that [the]

Three L Trust was 'set up as a sham trust to avoid direct legal [obligations] to unhappy Trailite customers.'" Langston admits that the article accurately quoted the basic allegation in the libel suit. Thus, the third article was also substantially true.

Each article was substantially true as a matter of law and thus privileged under article 5432. *See Ray*, 12 S.W.2d at 166. Because the articles could not be the basis of a libel action, the court properly entered the summary judgment in favor of the defendants on that ground. Points two and three are overruled.

### FIRST AMENDMENT

■ Another ground for the summary judgment was that the three articles were constitutionally privileged as substantially true accounts of pleadings in judicial proceedings available to the public. Langston challenges this ground in his ninth point. "At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 1047, 43 L.Ed.2d 328 (1975). To hold otherwise would likely result in the suppression of news that should be available to the public. *Id.*, 95 S.Ct. at 1046.

The articles were substantially true accounts of pleadings available to the public. Accordingly, the First Amendment precludes attaching any liability to their publication, and the court correctly entered the summary judgment on that ground. *See id.* at 1047. Point nine is overruled.

The defendants also asked for a summary judgment on the ground that they negated actual malice as a matter of law. A discussion of this ground and Langston's fourth through seventh points is unnecessary because the summary judgment is supported by other grounds. For the same reason, the sustaining of the eighth point does not require a reversal. Langston's tenth point, in which he contends that the summary judgment was improperly grant-

---

**3.** Bowers denied in his deposition ever making this statement to Snell.

ed because genuine fact issues remained to be decided by a jury, is overruled. His cross-points, in which he complains about the denial of his motion for a summary judgment, are likewise overruled.

Any holdings or interpretations of statutory or case law in our prior opinion, to the extent they are inconsistent with holdings or interpretations in this opinion, are rejected. *See Langston,* 719 S.W.2d at 612–28. The summary judgment is affirmed.